UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ERLINDA ABIBAS ANIEL, an individual; FERMIN SOLIS ANIEL, an individual; MARC JASON ANIEL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> GMAC MORTGAGE, LLC; EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC; AND DOES 1 THROUGH 50, <br><br> Defendants. | Case No:  C 12-04201 SBA <br><br> **ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> Docket 7. |

On August 9, 2012, Plaintiffs Erlinda Aniel, Fermin Aniel, and Marc Aniel (collectively "Plaintiffs") filed the instant action against Defendants GMAC Mortgage, LLC ("GMAC") and Executive Trustee Services, LLC ("ETS") (collectively "Defendants"), alleging nine claims for relief in connection with a foreclosure proceeding on their residence located at 75 Tobin Clark Drive, Hillsborough, CA 94010 (the "Property"). Compl., Dkt. 1.  The parties are presently before the Court on Plaintiffs' Ex Parte Application for Temporary Restraining Order and Order to Show Cause ("TRO Application"), which seeks an order enjoining the Trustee's Sale of the Property.  Dkt. 7.[1] Defendants oppose the TRO Application.  Dkt. 17.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the

---

[1] The Trustee's Sale was originally scheduled for August 27, 2012.  Dkt. 7.  On August 22, 2012, Plaintiffs notified the Court that the Trustee's Sale has been postponed to September 27, 2012.  Dkt. 11.

1  TRO Application.  The Court, in its discretion, finds this matter suitable for resolution

2  without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

3  **I.     DISCUSSION**

4       **A.     Legal Standard**

5       The purpose of a TRO is to preserve the status quo before a preliminary injunction

6  hearing may be held; its provisional remedial nature is designed merely to prevent

7  irreparable loss of rights prior to judgment.  See Granny Goose Foods, Inc. v. Brotherhood

8  of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974).  The same standard applies

9  to a motion for a TRO and a motion for a preliminary injunction.  See Stuhlbarg Int'l Sales

10 Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001).  To obtain a TRO or

11 preliminary injunction, the moving party must show: (1) a likelihood of success on the

12 merits; (2) a likelihood of irreparable harm to the moving party in the absence of

13 preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4)

14 that an injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., 555

15 U.S. 7, 20 (2008).

16      Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to

17 be balanced such that "serious questions" going to the merits and a balance of hardships

18 that "tips sharply" in favor of the movant are sufficient for relief so long as the other two

19 elements are also met.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-1135

20 (9th Cir. 2011).  Nevertheless, a preliminary injunction is "an extraordinary remedy that

21 may only be awarded upon a clear showing that the plaintiff is entitled to such relief,"

22 Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter

23 prongs.  See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776-

24 777 (9th Cir. 2011).

25      **B.     The TRO Application**

26      While the Court recognizes that loss of a home may constitute irreparable harm as a

27 matter of law, see Saba v. Caplan, 2010 WL 2681987, at *5 (N.D. Cal. 2010) (Armstrong,

28 J.), the Court finds that Plaintiffs have neither demonstrated that they are likely to succeed

on the merits nor raised "serious questions" going to the merits.  In their TRO Application, Plaintiffs contend that injunctive relief is warranted because, among other things, they have shown a likelihood of success on the merits.  Specifically, Plaintiffs contend that they are likely to prevail on the merits because: (1) "Defendants do not have a legal right to enforce the terms of the Deed of Trust" as Defendants are not the true creditors and therefore have "no legal, equitable, or pecuniary right in this debt obligation in the loan"; (2) "Plaintiffs were never personally contacted by telephone or in person by any of the Defendants prior to the 2012 Notice of Default" in violation of California Civil Code § 2923.5; (3) the Notice of Trustee's Sale is void because ETS was not properly substituted as the trustee; and (4) Defendants failed to respond to Plaintiffs debt validation request in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.  Plaintiffs arguments are discussed below.

### 1.      Wrong Entity Attempting to Foreclose on the Property

Plaintiffs contend that injunctive relief is appropriate because they are likely to prevail on the merits of their claim that Defendants do not have a legal right to enforce the terms of the Deed of Trust.  Pls.' Mtn. at 10.  In this regard, Plaintiffs' assert that there is no evidence showing that GMAC is in fact the lender with an enforceable interest in the Deed of Trust.  Pls.' Reply at 4.  Specifically, Plaintiffs argue that "the Defendants lacked authority to collect payments, let alone foreclose because they do not own an interest in their Note and Deed and failed to properly assign the Deed of Trust to DALT2007-AO5 Trust, who subsequently assigned the Deed to GMAC."[2]  Pls.' Mtn. at 10.  This is because "the Assignment [of the Deed of Trust] to DALT2007-AO5 took place after the closing date under the terms of the [Pooled Security Agreement], which gives proper inference that the Assignment was likely fabricated."  Id.  According to Plaintiffs, "the Assignment of the Deed of Trust to [the DALT2007-AO5 Trust] never happened because the transfer took place after the cut off date.  And as such, the assignment from [the DALT2007-AO5 Trust]

---

[2] Defendants do not dispute that Plaintiffs' Deed of Trust was assigned to the DALT2007-0A5 Trust.

1   to GMAC also never happened because [the trust] had no legal interest in the Deed of

2   Trust.  Pls.' Reply at 4.

3        The Court finds that Plaintiffs have failed to direct the Court to specific evidence in

4   the record or cite controlling authority which sustains their burden to clearly show that

5   enjoining the foreclosure sale is appropriate.  Plaintiffs' moving papers provide minimal

6   analysis to assist the Court in evaluating their legal challenge.  While Plaintiffs claim that

7   the wrong entity is attempting to foreclose on the property because the Deed of Trust was

8   not "properly assigned to the DALT2007-AO5 Trust because the entities involved in the

9   attempted transfer failed to adhere to the requirements set forth in the Trust Agreement and

10  thus the note and Deed are not part of the trust res," Pls.' Mtn. at 10, they have not provided

11  the Court with a copy of this document.  Without a copy of the "Trust Agreement," the

12  Court cannot determine whether the requirements of the agreement have been violated as

13  Plaintiffs contend.  There is no evidence to support Plaintiffs' claim that the assignment of

14  the Deed of Trust to the DALT2007-AO5 Trust was not done in compliance with the terms

15  of the Trust Agreement.

16       Moreover, notably absent from Plaintiffs' moving papers is citation to authority

17  demonstrating that injunctive relief is appropriate.  In their moving papers, Plaintiffs only

18  cite, without analysis or elaboration, Vogan v. Wells Fargo et al., 2011 WL 5826016, at *7

19  (E.D. Cal. 2011).   Plaintiffs then make the conclusory assertion that injunctive relief is

20  appropriate because they "have clearly made factual allegations in their Complaint and this

21  Motion that are both plausible and sufficient to support that Defendants lack authority to

22  enforce a security interest[] when they challenged Defendants' ability to enforce that

23  interest through its Complaint."  Pls.' Mtn. at 10.  The Court rejects this argument.

24       First, contrary to Plaintiffs' suggestion, the standard for injunctive relief is not met

25  simply by factual allegations.  "A preliminary injunction cannot issue absent a sufficient

26  evidentiary showing."  See Boggs v. Wells Fargo Bank NA, 2012 WL 566587, at *1 (N.D.

27  Cal. 2012) (Armstrong, J.) (citing Am. Passage Media Corp. v. Cass Commc'n, Inc., 750

28  F.2d 1470, 1473 (9th Cir. 1985).  Second, Vogan is distinguishable from the present case,

and therefore is of no assistance to Plaintiffs.  In that case, the district court denied a motion to dismiss a claim brought under California's Business and Professions Code § 17200, et seq. ("UCL") on the ground that the Plaintiff pled facts sufficient to maintain a claim under the unlawful prong of the UCL.  Vogan, 2011 WL 5826016, at *7.  In reaching this conclusion, the district court stated that Plaintiff "pleaded that Wells Fargo recorded a fabricated assignment of deed of trust assigning interest in Plaintiffs' loan to U.S. Bank. . . . Plaintiffs alleged that the recorded assignment was executed well after the closing date of the [mortgage backed security] to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated. Plaintiffs allege that such conduct, if proven, constitutes a violation of Cal.Penal Code § 532f(a)(4)."  Id. at *7.  Vogan does not support Plaintiffs' contention that injunctive relief is appropriate in this case.  Plaintiffs, for their part, failed to explain how Vogan supports their position.

        In their reply brief, Plaintiffs cite several district court cases they contend support their request for injunctive relief.  See Sacchi v. Mortgage Electronic Registration Systems, Inc., 2011 WL 2533029 (C.D. Cal. 2011); Weingartner v. Chase Home Finance, LLC, 702 F.Supp.2d 1276 (D. Nev. 2010); Ohlendorf v. Am. Home Mortgage Servicing, 279 F.R.D. 575 (E.D. Cal. 2010).   According to Plaintiffs, each of these cases "acknowledges the possibility for a claim based on the *wrong* entity initiating the foreclosure process."  Pls.' Reply at 3.  These cases are not controlling and, in any event, a mere possibility of stating a claim is not sufficient to warrant injunctive relief.  Moreover, none of the cases cited by Plaintiffs involved an application for a TRO.  Instead, each of these cases involved  a motion to dismiss.  In short, even assuming for the sake of argument that Plaintiff has sufficiently pled a claim based on the wrong entity initiating the foreclosure process, they have not sustained their burden to clearly show that they are likely to succeed on this claim and that the extraordinary remedy of injunctive relief is appropriate.  It is not enough to show that there is a mere "possibility" of success.  Winter, 555 U.S. at 22.  Rather, there must be a "clear showing" that the plaintiffs are entitled to preliminary relief.  Id.

///

## 2.   California Civil Code § 2923.5

Plaintiffs contend that they are entitled to injunctive relief because they are likely to succeed on their claim for wrongful foreclosure predicated on a failure to comply with California Civil Code § 2923.5.  Section 2923.5 provides that a "mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to section 2924 until 30 days after contact is made as required by paragraph two or 30 days after satisfying the due diligence requirements as described in subdivision (g)."  Cal. Civ. Code § 2923.5(a)(1).  Paragraph 2 provides, in part, that "[a] mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a)(2).[3]  Under subdivision (g), "[a] notice of default may be filed . . . when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent."  Id. § 2923.5(g) (emphasis added).

"Due diligence" in attempting to contact the borrower requires: (1) "sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency;" (2) "attempting to contact the borrower by telephone at least three times at different hours and on different days" (an automated system may be used if it connects the borrower to a live representative when answered, and the telephone call requirements are satisfied if the lender determines that the borrower's phone number has been disconnected); (3) sending a certified letter, with return receipt requested, if the borrower does not respond within two weeks of the telephone calls; (4) providing a toll-free telephone number that will provide access to a live representative

---

[3] The statute further requires that the notice of default include a "declaration that the mortgagee, beneficiary or authorized agent has contacted the borrower" pursuant to subdivision (a)(2).  Cal. Civ. Code § 2923.5(b).

during business hours; and (5) posting a "prominent link on the homepage of its Internet Web site" to information about avoiding foreclosure.  Cal. Civ. Code § 2923.5(g).

"The right conferred by section 2923.5 is a right to be contacted to 'assess' and 'explore' alternatives to foreclosure prior to a notice of default.  It is enforced by the postponement of a foreclosure sale."  <u>Mabry v. Superior Court</u>, 185 Cal.App.4th 208, 225 (2010).

Plaintiffs contend that Defendants violated § 2923.5 because they never personally contacted them by telephone or in person prior to the 2012 Notice of Default, citing the declaration of Erlinda Aniel.  Aniel Decl., Dkt. 7-2  In her declaration, Erlinda Aniel attests that at no time prior to issuing the April 21, 2012 Notice of Default did any Defendant or any of their agents contact her in person or by telephone to discuss options as required by § 2923.5.  <u>Id.</u> ¶ 15.  In response, the Defendants contend that they complied with the "due diligence" requirements of § 2923.5(g).  Defs.' Opp. at 3.

According to Defendants, the last payment received by GMAC on the loan was on June 17, 2008.  Calhoun Decl. ¶ 6.  In January 2009, Plaintiffs requested that GMAC modify the loan.  <u>Id.</u> ¶ 7, Ex. D.  However, because the income stated on the request was insufficient for a modification, the loan was not modified.  <u>See id.</u>  Due to the continuing failure to make loan payments, GMAC attempted to call Erlinda Aniel on three occasions in August 2011 to inquire about her financial situation and explore options for avoiding foreclosure.  <u>Id.</u> ¶ 9.  On each occasion there was no answer.  <u>Id.</u>

On October 11, 2011, GMAC sent a letter by certified United States Mail to Erlinda Aniel stating that GMAC was contacting her as required by California law; noting that it had made a number of attempts to make arrangements with her without success.  Calhoun Decl., Ex. F.  The letter stated that Erlinda Aniel was being notified that she had 30 days from the date of the letter to contact GMAC to discuss options to avoid foreclosure, and that if she failed to contact GMAC within this period of time, GMAC is permitted by law to foreclose upon her property.  <u>Id.</u>  The letter goes on to state that "[i]f you wish to explore options that may prevent the foreclosure on your property . . . it is imperative to contact us

immediately.  We have a number of options and programs for which you may be eligible. You, however, must . . . contact[] us so that we can determine the best way to help you." Id.  The letter contains GMAC's toll-free telephone number and the time to call, and informs Erlinda Aniel that she can obtain information about possible loss mitigation options by visiting GMAC's website at www.gmacmortgage.com.  Id.  The letter also informs Erlinda Aniel that, for additional assistance, she may contact HUD to locate a HUD-certified counseling office by calling HUD's toll-free number.  Id.

Although GMAC did not receive a response to this letter, it received a letter from Erlinda Aniel claiming that she was no longer required to repay the loan because she filed a voluntary bankruptcy petition.  Calhoun Decl. ¶ 11, Exh. G.  On November 1, 2011, GMAC responded to a Validation of Debt request by Erlinda Aniel by written correspondence.  Id., Exh. H.  The letter indicates that GMAC enclosed a copy of the loan documents and a payment history, and requests that Erlinda Aniel explain why she believes that she is no longer obligated to pay the loan.  Id.  Having received no response to the October 11, 2011 letter, GMAC attempted to call Erlinda Aniel six additional times on three different days in late January 2012 to assess her financial situation and explore options to avoid foreclosure.  Each time, there was no answer.  Id. ¶ 13.  After GMAC did not receive a response from Erlinda Aniel for two weeks, GMAC sent her another certified letter on February 14, 2012.  Id. ¶ 13, Exh. I.  The substance of this letter is virtually identical to the October 2011 letter.  Id.

On March 16, 2012, apparently in response to further requests by Erlinda Aniel to release the Deed of Trust on the basis that the bankruptcy eliminated the security instrument, GMAC sent Erlinda Aniel written correspondence explaining that her bankruptcy discharge affects only her personal liability on the loan, but does not affect the security interest of the Deed of Trust or GMAC's right to enforce that interest by a foreclosure sale.  Calhoun Decl. ¶ 15, Exh. J.  On April 27, 2012, a Notice of Default was recorded, which states that the " 'beneficiary, or its authorized agent declared that they have complied with California Civil Code Section 2923.5 by making contact with the borrower

1   or tried with due diligence to contact the borrower as required by California Civil Code

2   Section 2923.5."  Compl. ¶¶ 51-52, Exh. H.

3        In response to the evidence submitted by Defendants, Plaintiffs argue that

4   Defendants failed to satisfy the "due diligence" requirements of § 2923.5(g) because they

5   have submitted the declaration of Erlinda Aniel attesting that she never received the

6   telephone calls GMAC claims it made.  Pls.' Reply at 7.  Plaintiffs, however, do not claim

7   that they did not receive the correspondence sent by GMAC, including the October 2011

8   and February 2012 letters.

9        Based on the evidence submitted by the parties, the Court finds that Plaintiffs have

10  not sustained their burden to make a clear showing that they are likely to succeed on the

11  merits of their claim that Defendants failed to comply with § 2923.5.  To the extent

12  Plaintiffs argue that injunctive relief is appropriate because Defendants have not shown

13  compliance with § 2923.5, the Court rejects this argument.  Plaintiffs, as the party seeking

14  injunctive relief, have the burden to make a clear showing that they are entitled to such

15  relief.  They have failed to do so.  Defendants submitted evidence demonstrating that they

16  complied with the "due diligence" requirements of §2923(g), while Plaintiffs submitted the

17  declaration of Erlinda Aniel attesting that she never received a telephone call from GMAC.

18  As such, a material factual dispute exists regarding whether Defendants complied with the

19  requirement to contact the borrower by telephone at least three times at different hours and

20  on different days.  In the absence of a clear showing of entitlement, the Court cannot

21  conclude that the extraordinary remedy of injunctive relief is appropriate.

22       The Court notes that Plaintiffs object to the declaration of Russell Calhoun, a senior

23  litigation analyst with GMAC who prepared his declaration after reviewing business

24  records that are maintained in the ordinary course of GMAC's business.  Calhoun Decl. ¶¶

25  1-2.  Plaintiffs object to this declaration, without citation to any authority, "based on a lack

26  of foundation, hearsay, and lack of personal knowledge."  Pls.' Reply at 2.  More

27  specifically, with respect to Plaintiffs' § 2923.5 claim, Plaintiffs argue that Calhoun's

28  declaration "does not hold any weight" because he has no personal knowledge of the

statements made therein, including his statements regarding the telephone calls that GMAC claims it made to Erlinda Aniel.  Pls.' Reply at 7.  The Court disagrees.  First, because Plaintiffs' did not cite any authority and legal analysis in support of their objection, the objection is unsupported, and therefore lacks merit.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").  Second, "[p]ersonal knowledge . . . is not strictly limited to activities in which the declarant has personally participated."  See e.g., Washington Cent. R.R. Co., Inc. v. National Mediation Bd., 830 F.Supp. 1343, 1352-1353 (E.D. Wash. 1993) (citing Londrigan v. FBI, 670 F.2d 1164, 1174-1175 (D.C. Cir. 1981).  Instead, "[p]ersonal knowledge can come from the review of the contents of business records, and an affiant may testify to acts that she did not personally observe but which have been described in business records."  Washington Cent. R.R. Co., 830 F.Supp. at 1352-1353; Laurant Beverly Hills v. Ford Motor Co., 108 F.3d 338 *3 (9th Cir. 1996); New Hampshire Ins. Co. v. Blaze Const. Inc., 28 F.3d 107 *2 (9th Cir. 1994).

### 3.    California Civil Code § 2934a(b)

Plaintiffs contend that injunctive relief is appropriate because the Defendants did not comply with California Civil Code § 2934a(b), and because ETS was not properly substituted as the trustee in accordance with the covenants under the Deed of Trust.  Pls.' Mtn. at 12.

Section 2934a(b) provides:

> If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries shall cause a copy of the substitution to be mailed, prior to the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b.  An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.

While Plaintiffs argue in their moving papers that the Trustee's Sale is void because Defendants violated § 2934a(b), they fail to cite specific evidence or case law in support of their position.  Pls.' Mtn. at 12.  Plaintiffs simply contend that the statute was violated

because ETS never sent any notice of the "substitution of trustee" and did not attach any affidavit of mailing in its recording of the Substitution of Trustee.  Id.  In their reply brief, Plaintiffs clarify that Defendants did not comply with § 2934a(b) regarding the Substitution of Trustee recorded on April 27, 2012, arguing that "Defendants did not attach an affidavit to the substitution that notice had been given to those persons and in the manner required by 2934a(b)."  Pls.' Reply at 7-8.

The Court finds that Plaintiffs have failed to demonstrate that Defendants violated § 2934a(b).  Plaintiffs have failed to cite any authority in support of their position, nor does the plain language of the statute support their position.  Indeed, as pointed out by Defendants, the undisputed evidence in the record demonstrates that the Substitution of Trustee designating ETS as the new trustee and the Notice of Default were both recorded on April 27, 2012.  Compl., Exhs. H, I.  These documents also demonstrate that the Substitution of Trustee was recorded as document no. 2012-058860, while the Notice of Default was recorded as document no. 2012-058861.  Id. (emphasis added.)  Thus, the Substitution of Trustee was recorded before the Notice of Default on April 27, 2012.  Id.  In short, Plaintiffs have not demonstrated that the Substitution of Trustee was "effected" after the Notice of Default was recorded to trigger the requirements of § 2934a(b).

To the extent Plaintiffs argue that injunctive relief is appropriate because the Substitution of Trustee was in violation of the covenants of the Deed of Trust, the Court rejects this argument.  Plaintiffs have failed to cite any authority in support of their position.  As such, they have failed to sustain their burden to clearly show that the extraordinary remedy of injunctive relief is appropriate

### 4.    RESPA

Plaintiffs contend that injunctive relief is appropriate because the Defendants failed to comply with the requirements of RESPA.  Pls.' Mtn. at 12-13.  Plaintiffs' third claim for relief alleges a violation of 12 U.S.C. § 2605, which only affords the following types of relief for individual plaintiffs: "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or

practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1).  Thus, this claim does not provide a basis for injunctive relief, including enjoining foreclosure of Plaintiffs' home.  Numerous district courts have denied preliminary injunctions to RESPA plaintiffs on this basis.  See e.g., Gray v. Central Mortg. Co., 2010 WL 1526451, at * 3 (N.D. Cal. 2010) (Seeborg, J.); Chung v. NBGI, Inc., 2010 WL 84129, at *3 (N.D. Cal. 2010) (Patel, J.).

### 5.    Summary

In sum, because Plaintiffs have not met their burden to establish a likelihood of success on the merits or raised "serious questions" going to the merits, and because they must show each of the requisite elements to obtain a TRO under the Winter standard, a TRO is not warranted.  Winter, 555 U.S. at 20.  Plaintiffs have not met their burden to show that they are entitled to the extraordinary remedy of a TRO under the standards articulated in Winter and Cottrell.  Plaintiffs have not made "a clear showing" that they are entitled to relief.  Id. at 22.  Accordingly, Plaintiffs' TRO Application is DENIED.[4]

Finally, the Court finds that Plaintiffs lack of diligence in filing their TRO Application also militates against injunctive relief.  Plaintiffs have known since at least on or around early May 2012 about the potential for foreclosure when they received the Notice of Default.  Compl. ¶¶ 51, 55; Erlinda Aniel Decl. ¶ 16.  Plaintiffs, however, waited over three months to file the instant action and their TRO Application.  They have not explained this delay, and therefore have failed to demonstrate the absence of fault in creating the crisis that triggers the need for injunctive relief.  The Court finds that Plaintiffs' unexplained and lengthy delay in seeking injunctive relief implies a lack of urgency and irreparable harm and militates against granting the relief requested  See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr., 991 F.2d 536, 544 (9th Cir. 1993) ("Plaintiff's long delay

---

[4] Because the Court finds that Plaintiffs have not met their burden to establish a likelihood of success on the merits, it need not consider whether Plaintiffs established the other elements to obtain a TRO under the Winter standard.

before seeking a preliminary injunction implies a lack of urgency and irreparable harm.") (internal quotation marks and citation omitted); <u>Lydo Enters. v. City of Las Vegas</u>, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); <u>see also</u> William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 13:95 (The Rutter Group 2010) ("An important factor will be whether the applicant could have sought relief earlier by a motion for preliminary injunction, avoiding the necessity for a last-minute TRO. Delay in seeking relief may be evidence of laches . . . or negate the alleged threat of 'immediate' irreparable injury. . . . The court has discretion to deny the application on either ground").

## II.   CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Plaintiffs' TRO Application is DENIED.

2.      This Order terminates Docket 7.

IT IS SO ORDERED.

Dated: 9/26/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge